## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Deka USA DIM Property One LP<br>350 Fifth Avenue, Suite 3920<br>New York, NY  10118 | |
| | Civil Action No. 1:24-cv-2876 |
| Plaintiff, | |
| vs | COMPLAINT |
| The Whiting-Turner Contracting Company<br>300 East Joppa Road<br>Baltimore, MD  21286 | |
| And | |
| BCIndustries Inc.<br>5008 Tampa West Blvd.<br>Tampa, FL 33634 | |
| And | |
| BCI Incorporated<br>5008 Tampa West Blvd.<br>Tampa, FL 33634 | |
| And | |
| Sun Metals Systems Inc.<br>5008 Tampa West Blvd.<br>Tampa, FL 33634 | |
| Defendants. | |

Serve upon:
The Whiting-Turner Contracting Company
CT Corporation System
1014 15th Street NW, Suite 1000
Washington, DC  20005

And

BCIndustries Inc., BCI Incorporated and Sun Metals Systems Inc.
c/o Andrew Mayts,
101 E. Kennedy
Suite 2800
Tampa, FL  33602

25029742 v1

## COMPLAINT

Plaintiff, Deka USA DIM Property One LP ("Deka") by and through undersigned counsel hereby states as its Complaint against Defendants The Whiting-Turner Contracting Company ("W-T"), Sun Metals Systems, Inc.("Sun Metals"), BCIndustries Inc. and BCI Inc. (collectively "BCI") as follows:

### I.      THE PARTIES

1.      Plaintiff Deka is a foreign for-profit limited partnership organized and existing under the laws of the state of Delaware with its principal place of business located at 350 Fifth Avene, Suite 3920, New York, New York 10118.  No member or parent of Deka is incorporated or organized under the laws of either Maryland or Florida, have their principal place of business in Maryland or Florida, or otherwise reside in Maryland or Florida.

2.      Defendant W-T, upon information and belief, is a corporation organized and existing under the laws of the state of Maryland with its principal place of business located at 300 East Joppa Road, Baltimore, Maryland 21286.

3.      Defendant BCIndustries Inc., upon information and belief, is a corporation organized and existing under the laws of the state of Florida with its principal place of business located at 5008 Tampa West Blvd. Tampa, FL 33634.

4.      Defendant BCI Incorporated, upon information and belief, is a corporation organized and existing under the laws of the state of Florida with its principal place of business located at 5008 Tampa West Blvd. Tampa, FL 33634.

25029742 v1

5.      Defendant Sun Metals Systems Inc., upon information and belief, is a corporation organized and existing under the laws of the state of Florida with its principal place of business located at 5008 Tampa West Blvd. Tampa, FL 33634.

## II.      JURISDICTION AND VENUE

6.      Deka incorporates by reference as if fully set forth herein each and every allegation set forth in Complaint Paragraph Nos. 1 and 5.

7.      Subject matter jurisdiction is proper in the United States District Court for the District of Columbia because there is complete diversity of citizenship between Deka and W-T and BCI and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) pursuant to 28 U.S.C. §1332(a)(1).

8.      Personal jurisdiction is proper in the United States District Court for the District of Columbia because the District of Columbia is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred and a substantial part of the property that is the subject matter of this action is situated pursuant to 28 U.S.C. §1391(a).

## III.      STATEMENT OF FACTS

9.      Deka incorporates by reference as if fully set forth herein each and every allegation set forth in Complaint Paragraph Nos. 1 through 8.

### I.      W-T Is Contracted As The General Contractor For The Project.

10.      JBG/LEP Southeast, LLC ("Assignor") owned the property at the site known as 500 L'Enfant Plaza SW, Washington, DC ("Property").

11.      On January 6, 2017, W-T entered into a construction agreement with the Assignor for the construction of the new L'Enfant Plaza Southeast Office Building on the Property ("Project").  The Project consists of twelve stories of office space above three stories of parking. The Architect of Record for the Project is Zimmer Gunsul Fransca Architects LLP ("ZGF").

3

12.     The construction agreement executed between W-T and Assignor is a modified AIA A102-2007 Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price and custom General Conditions of the Contract for Construction ("General Contract").  Assignor is identified throughout the General Contract as the Owner of the Project.  A true and correct copy of the General Contract is attached hereto **Exhibit A** and incorporated herein by reference.

13.     W-T agreed to construct the Project in accordance with the requirements of the Contract Documents and "with the highest construction industry standards and practices for producing a first-class office building in compliance with all Legal Requirements."  W-T agreed that the Assignor selected W-T to construct the Project because of W-T's special expertise in constructing similar Projects.

14.     W-T warranted that all manufacturers or other warranties and guarantees of all materials and equipment furnished by or to the Contractor, Subcontractors, Sub-subcontractors and suppliers and all approval and service contracts shall run directly to or be specifically assigned to Owner or to such other entity as Owner may request.

15.     W-T also agreed to be liable to the Owner for defective installation "…if a manufacturer's warranty or guaranty is ineffective because the material or equipment has been defectively installed…"

16.     W-T was obligated to supervise and direct the Work in a skillful, workmanlike and attentive manner in accordance with the Contract Documents and with all Legal Requirements and in accordance with the construction standards and practices to be expected from a large, experienced general contractor located and licensed in the Washington D.C. metropolitan area for a first-class complete and functioning Project.  W-T agreed that the method of fabrication and

incorporation into the building shall be governed by the best-known practice in each of the respective trades.

17.     W-T agreed to be responsible to the Owner for all damages, losses, cost and expenses resulting from the acts and omissions of W-T's employees, Subcontractors, Sub-Subcontractors, suppliers and their respective agents and employees, and other persons performing any of the Work under a contract with the Contractor or supplying any material for the Work. Under no circumstances shall any inspection, test or approval constitute acceptance of the Work later found to be defective, or act as a waiver or estoppel regarding Owner's rights with respect to any such defective Work.

18.     W-T is obligated to defend, indemnify and hold harmless the Owner from and against claims for economic loss caused by W-T's or a Subcontractor's (or anyone for who they may be responsible) negligence or willful misconduct with respect to the Project.

19.     W-T agreed that it shall not be relieved of responsibility for any deviation from the requirements of the Contract Documents by ZGF's approval of Shop Drawings, Product Data or Samples and W-T shall not be relieved from responsibility for errors or omissions in the Shop Drawings, Product Data or Samples by ZGF's approval thereof.

20.     W-T's receipt of final payment from the Owner waived all claims by the Owner against W-T except those arising from faulty or defective Work, failure of the Work to comply with the requirements of the Contract Documents, terms of any warranties or guarantees set forth in or required by the Contract Documents, continuing obligations, responsibilities or liabilities of T-W that survive completion and acceptance of the Work and final payment, including W-T's indemnity obligations, and matters arising after final payment.

II.     **W-T Subcontracts Fabrication, Assembly and Installation The Project's Façade To BCI.**

21.     On January 6, 2017, W-T entered into a written subcontract agreement for Glass, Glazing and Metal Panel with BCI Industries, Inc. ("BCI"), which required BCI to fabricate and install the exterior façade of the Project ("BCI Subcontract").  The façade consisted of aluminum-framed curtain walls with insulated glass units and composite metal panels ("CMPs").  BCI's mock-up drawings and shop drawings show the CMPs structurally glazed to the aluminum framing around the panel perimeter using DOW 795 structural silicone.

22.     The BCI Subcontract explicitly identifies Assignor as the Project's owner and directly obligates BCI to the Owner.

23.     BCI explicitly agreed to stand in W-T's shoes with respect to W-T's obligations to the Owner and perform all work and obligations as set forth on the Contract Documents to the satisfaction of the Owner.

24.     BCI also warranted to remedy defective workmanship, material or damages to the satisfaction of the Owner and explicitly assumed all obligations, duties and responsibilities by which W-T is bound to Owner pursuant to the Contract Documents.

25.     Upon information and belief, BCI subcontracted the design, engineering, fabrication and/or assembly of the CPMs to its sister company, Sun Metals.

26.     BCI and Sun Metals prepared and submitted the shop drawings and designs for both the curtain wall for the entire building and the CMPs.

27.     Sun Metals also prepared and submitted the shop drawings and designs for the Sun Metals 700SG CW unitized curtain wall assembly that the CMPs are structurally glazed into with structural silicone sealant.

25029742 v1

28.     Upon information and belief, Sun Metals also fabricated, assembled, manufactured and/or sold all or part of the CPM system that is failing and detaching from the building.

### III.     Deka Acquires The Project And Discovers Latent Defects In The Project's Façade.

29.     Construction on the Project was completed in 2019.

30.     On or around September 17, 2021, Deka Immobilien Investment GMBH ("Deka GMBH") purchased the Project from Assignor.

31.     Prior to the sale, Deka GMBH retained the consultants to perform a property condition assessment of the Project, which included the condition assessment of the envelope and exterior façade of the Project.

32.     The consultant found no significant defects or deterioration to the exterior façade of the Project based on its reasonable inspection of the building facade.

33.     Deka GMBH subsequently transferred, conveyed and/or assigned all ownership of the Project to Deka.

34.     Deka is the current owner of the Project.

35.     After taking possession of the Project, in December of 2021, Deka first discovered a widespread latent defect with the CMPs affixed to the building's façade.  Specifically, the structural silicon or adhesive used to construct and affix the CMPs to the building's aluminum curtain wall system was systematically failing due to fabrication, installation and/or design defects ("CMP Defect").

36.     As a result of discovering the CMP Defect, the CMPs covering the building façade were determined to be in a state of failure and at risk of detaching from the building.

37.     To prevent further damage, Deka instituted temporary repairs to stabilize the CMPs in the short term while a permanent repair and fix was developed.

25029742 v1

38.     The Assignor, the prior owner, had no knowledge of the widespread adhesive failures on the CMPs prior to being informed of the issue by Deka in or after December of 2021.

39.     Indeed, the CMP Defect was hidden and concealed underneath the CMPs and could not have been discovered through a reasonable, non-destructive inspection.

40.     Deka notified W-T and BCI of the latent CMP Defect and demanded it be cured.

41.     To date, both W-T and BCI have refused to honor their contractual obligations and warranties under the General Contract and failed to take any steps to repair, cure and/or correct the CMP Defect.

42.     On June 30, 2022, Deka entered into an Assignment and Assumption of Contract Agreement with Assignor (the "Assignment") whereby Assignor transferred, assigned and conveyed to Deka all of Assignor's right, title and interest in and to any claims, rights to claims, and causes of action (including in contract, tort, common law, statute (equity or otherwise), assignments, warranties (express or implied), any and all rights against any subcontractors or suppliers arising out of or related to W-T's Contract with Assignor for the Project or the work performed pursuant to the Contract for the Project and all warranties arising out of or related to W-T's Contract with Assignor for the Project.

43.     The Assignment is valid and enforceable.

## COUNT I: BREACH OF CONTRACT
### (W-T)

44.     Deka hereby incorporates by reference its allegations contained in the foregoing paragraphs of the Complaint as if fully rewritten herein.

45.     On or around January 6, 2017, Assignor and W-T entered into the General Contract described above and attached hereto as **Exhibit A**.

46.     The General Contract, incorporated exhibits, and contract documents constitute a valid and enforceable contract between the parties, which is supported by adequate consideration.

47.     Subsequently, the Assignor assigned the General Contract to Deka.

48.     The Assignment constitutes a valid and enforceable contract and assignment, which is supported by adequate consideration.

49.     W-T materially breached the terms and conditions of the parties' contract by, including, but not limited to:  (i) delivery of unsatisfactory work and damaging to completed work; (ii) failing to complete the Project in compliance with the General Contract's plans and specifications; (iii) defectively constructing and installing the CMPs on the Project; (iv) failing to supervise and direct the fabrication, assembly and installation of the CMPs on the Project in a skillful, workmanlike and attentive manner in accordance with the Contract Documents and with all Legal Requirements; (v) failing to take steps to repair, cure and/or correct the CMP Defect; and (vi) otherwise disregarding and ignoring W-T's obligations under the General Contract.

50.     Assignor and Deka fully performed all obligations required under the terms and conditions of the General Contract and met all conditions precedent to the performance by W-T.

51.     As a direct and proximate result of W-T's material breaches of the General Contract, Deka has incurred and will continue to incur direct and indirect damages.  This includes, but is not limited to, Deka incurring and continuing to incur direct compensatory damages related to diagnosing, repairing and curing the CMP Defect, in an amount no less than $75,000, to be more fully proven at trial, in addition to any applicable prejudgment interest, post-judgment interest, attorney fees and the costs of this action.

## COUNT II: BREACH OF CONTRACT
### (BCI)

52.     Deka hereby incorporates by reference its allegations contained in the foregoing paragraphs of the Complaint as if fully rewritten herein.

53.     On or around January 6, 2017, BCI and W-T entered into the BCI Subcontract described above.

54.     The BCI Contract, incorporated exhibits, and contract documents constitute a valid and enforceable contract between the parties, which is supported by adequate consideration.

55.     Pursuant to the General Contract, W-T was required to assign to Assignor all subcontracts entered into on the Project, including the BCI Subcontract.

56.     Upon information and belief, upon completion of the Project, W-T properly assigned the BCI Subcontract to Assignor

57.     The W-T's assignment of the BCI Subcontract to Assignor constitutes a valid and enforceable contract and assignment, which is supported by adequate consideration.

58.     Subsequently, the Assignor assigned the BCI Subcontract to Deka.

59.     The Assignor's assignment of the BCI Subcontract to Deka constitutes a valid and enforceable contract and assignment, which is supported by adequate consideration.

60.     BCI materially breached the terms and conditions of the parties' contract by, including, but not limited to:  (i) delivery of unsatisfactory work and damaging completed work; (ii) failing to complete the Project in compliance with the BCI Subcontract's and Project's plans and specifications; (iii) defectively constructing and installing the CMPs on the Project; (iv) failing to supervise and direct the fabrication, assembly and installation of the CMPs on the Project in a skillful, workmanlike and attentive manner in accordance with the Contract Documents; (v) failing

to take steps to repair, cure and/or correct the CMP Defect; and (vi) otherwise disregarding and ignoring BCI's obligations under the BCI Subcontract.

61.     Assignor, Deka and W-T fully performed all obligations required under the terms and conditions of the BCI Subcontract and met all conditions precedent to the performance by BCI.

62.     As a direct and proximate result of BCI's material breaches of the BCI Subcontract, Deka has incurred and will continue to incur direct and indirect damages.  This includes, but is not limited to, Deka incurring and continuing to incur direct compensatory damages related to diagnosing, repairing and curing the CMP Defect, in an amount no less than $75,000, to be more fully proven at trial, in addition to any applicable prejudgment interest, post-judgment interest, attorney fees and the costs of this action.

## COUNT III: BREACH OF CONTRACT/INTENDED THIRD PARTY BENEFICIARY
### (BCI)

63.     Deka hereby incorporates by reference its allegations contained in the foregoing paragraphs of the Complaint as if fully rewritten herein.

64.     In the alternative to Count II, Assignor was an intended third-party beneficiary of the BCI Subcontract.

65.     On or around January 6, 2017, BCI and W-T entered into the BCI Subcontract described above.

66.     The BCI Contract, incorporated exhibits, and contract documents constitute a valid and enforceable contract between the parties, which is supported by adequate consideration.

67.     BCI and W-T clearly and irrevocably intended for the BCI Subcontract to benefit Assignor.

68.     Assignor was aware that BCI and W-T entered into the BCI Subcontract for its benefit.

69.     The BCI Subcontract also explicitly names Assignor, and BCI explicitly obligated itself to the Assignor.

70.     Assignor assigned all rights and claims related to and arising out of the BCI Subcontract to Deka.

71.     BCI materially breached the terms and conditions of the parties' contract by, including, but not limited to:  (i) delivery of unsatisfactory work and damaging completed work; (ii) failing to complete the Project in compliance with the BCI Subcontract's and Project's plans and specifications; (iii) defectively constructing and installing the CMPs on the Project; (iv) failing to supervise and direct the fabrication, assembly and installation of the CMPs on the Project in a skillful, workmanlike and attentive manner in accordance with the Contract Documents; (v) failing to take steps to repair, cure and/or correct the CMP Defect; and (vi) otherwise disregarding and ignoring BCI's obligations under the BCI Subcontract.

72.     Assignor, Deka and W-T fully performed all obligations required under the terms and conditions of the BCI Subcontract and met all conditions precedent to the performance by BCI.

73.     As a direct and proximate result of BCI's material breaches of the BCI Subcontract, Deka has incurred and will continue to incur direct and indirect damages.  This includes, but is not limited to, Deka incurring and continuing to incur direct compensatory damages related to diagnosing, repairing and curing the CMP Defect, in an amount no less than $75,000, to be more fully proven at trial, in addition to any applicable prejudgment interest, post-judgment interest, attorney fees and the costs of this action.

## COUNT IV: BREACH OF EXPRESS WARRANTIES D.C. CODE §28:2-313
### (W-T and BCI)

74.    Deka hereby incorporates by reference its allegations contained in the foregoing paragraphs of the Complaint as if fully rewritten herein.

75.    BCI expressly warranted that the aluminum curtain wall system for the exterior façade would be fabricated in compliance with the mock-up drawings and shop drawings BCI submitted to ZGF for review in compliance with the Contract Documents prior to fabrication, delivery and installation at the Project.

76.    W-T warranted that all work on the Project would be performed in a good and workmanlike manner, and would be of good quality, free from faults and defects and in conformance with the Contract Documents.  W-T explicitly agreed that all Work not conforming to these requirements, including substitutions not properly approved and authorized, shall be considered defective.

77.    As BCI was W-T's subcontractor on the Project, W-T is responsible and liable for BCI's work on the Project as if W-T performed the work itself.

78.    BCI's and its subcontractor, Sun Metals', mock-up drawings and shop drawings were submitted for review with the CMPs structurally glazed to the aluminum framing around the perimeter using DOW 795 structural silicone.

79.    Pursuant to D.C. Code §28:2-313(1)(c), the CMPs fabricated, delivered and installed at the Project failed to conform to BCI's and its subcontractor, Sun Metals', mock-up drawings and shop drawings by BCI failing to properly prepare the aluminum surface, failing to properly apply the structural silicone to the aluminum framing and failing to properly cure the structural silicone prior to delivery and installation at the Project.

80.     As a direct and proximate result, over time adhesion failures occurred between the structural silicone and the backside of the CMPs causing the CMPs over time to fail and detach from the building's façade.

81.     Deka furnished W-T and BCI reasonable and timely notice of the CMP Defect pursuant to D.C. Code §28:2-607(3)(a).

82.     As a direct and proximate result of BCI's breach of express warranties under D.C. Code §28:2-313(1)(2), Deka has incurred and will continue to incur direct and indirect damages. This includes, but is not limited to, Deka incurring and continuing to incur direct compensatory damages related to diagnosing, repairing and curing the CMP Defect, in an amount no less than $75,000, to be more fully proven at trial, in addition to any applicable prejudgment interest, post-judgment interest, attorney fees and the costs of this action.

## COUNT V: BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE D.C. CODE §28:2-315
### (BCI and Sun Metals)

83.     Deka hereby incorporates by reference its allegations contained in the foregoing paragraphs of the Complaint as if fully rewritten herein.

84.     BCI and Sun Metals at the time of contracting agreed to sell Assignor and W-T the aluminum curtain wall system for the exterior façade for the Project had reason to know the goods were being purchased for a construction project located in Washington, DC.  BCI and Sun Metals as merchants knew or should have known that Assignor and W-T would rely on BCI's and Sun Metal's skill and judgment to furnish suitable goods for the exterior façade at the Project.

85.     The failure of the structural silicone applied by BCI and/or Sun Metals during fabrication and shop assembly to properly adhere to the CMPs causes the CMPs to be unfit for their particular purpose pursuant to D.C. Code §28:2-315.

86.     As a direct and proximate result of BCI's and Sun Metals' breaches of the implied warranty of fitness for a particular purpose under D.C. Code §28:2-315, Deka has incurred and will continue to incur direct and indirect damages.  This includes, but is not limited to, Deka incurring and continuing to incur direct compensatory damages related to diagnosing, repairing and curing the CMP Defect, in an amount no less than $75,000, to be more fully proven at trial, in addition to any applicable prejudgment interest, post-judgment interest, attorney fees and the costs of this action.

### COUNT VI: PROFESSIONAL NEGLIGENCE
**(W-T, BCI, and Sun Metals)**

87.     Deka hereby incorporates by reference its allegations contained in the foregoing paragraphs of the Complaint as if fully rewritten herein.

88.     Sun Metals, W-T and BCI failed to properly design and/or unilaterally redesigned the CMPs for the Project defectively such that the CMPs are failing and detaching from the exterior of the building due to design errors.

89.     Sun Metals, W-T and BCI failed to perform their work on the Project with the professional skill and care ordinarily provided by designers and./or engineers practicing in this locality under the same or similar conditions as well as the care required by the General Contract and BCI Subcontract and violated industry standards.

90.     Sun Metals, W-T and BCI breached their common law professional duties.

91.     As a result of Sun Metals, W-T and BCI's breaches of their common law professional duties, Deka has incurred and will continue to sustain significant and substantial direct and indirect damages in an amount no less than $75,000, to be more fully proven at trial, in addition to any applicable prejudgment interest, post-judgment interest, attorney fees and the costs of this action.

15

25029742 v1

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Deka requests that this Court grant judgment and damages in favor of Plaintiff-Deka on Counts I through VI of Plaintiff-Deka's Complaint and request the following relief:

A.    An award of all direct and indirect damages available to Deka under the laws of the District of Columbia;

B.    An award of interest, including prejudgment and post-judgment interest at the statutory rate;

C.    An award of Plaintiff-Deka's costs and attorney's fees in this action; and

D.    Such other and further equitable and legal relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Michael D. Meuti*
Michael D. Meuti (DC Bar #989355)
BENESCH, FRIEDLANDER, COPLAN &
    ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, Ohio  44114
Telephone:  (216) 363-4500
Facsimile:  (216) 363-4588
Email:       mmeuti@beneschlaw.com

25029742 v1