UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DEKA USA DIM PROPERTY ONE LP, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No.:   24-2876 (RC) |
| v. | : | |
| | : | Re Document Nos.:   25, 27 |
| WHITING-TURNER CONTRACTING COMPANY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM OPINION

**DENYING WHITING-TURNER CONTRACTING COMPANY'S MOTION FOR SUMMARY JUDGMENT**

### I.  INTRODUCTION

In August 2021, a metal panel fell off the façade of a commercial building in Washington, D.C., and another panel appeared loose.  The next month, Plaintiff Deka USA DIM Property One LP ("Deka") purchased the property.  In December 2021, a consultant informed Deka that the structural silicone used to affix metal panels to the building's aluminum curtain wall was systematically failing.  On October 9, 2024, Deka filed this suit against the building's general contractor, Whiting-Turner Contracting Company ("Whiting-Turner"), a subcontractor, BCI, Inc. ("BCI"), and its sister company, Sun Metals Systems Inc. ("Sun Metals") (collectively, "Defendants") for damages related to the building façade.  BCI and Sun Metals answered the Amended Complaint, but Whiting-Turner moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment under Rule 56.  Whiting-Turner asserts that the two claims against it, for breach of contract and negligence under D.C. law, are both barred by the relevant three-year statute of limitations.  For the reasons stated below, the Court construes Whiting-Turner's motion as one for summary judgment and denies the motion.

## II.  BACKGROUND

In January 2017, Whiting-Turner entered a construction contract with JBG/LEP Southeast, LLC ("JBG/LEP"), to improve the property known as 500 L'Enfant Plaza in Washington, D.C.  Mot. to Dismiss, or Mot. for Summ. J. ("MSJ") at 3, ECF No. 25.[1]  Whiting-Turner subcontracted to BCI the furnishing and installation of a metal curtain wall system on the façade of the property.  *Id.*  BCI finished the work in June 2018 and issued a warranty.  *Id.*  In turn, JBG/LEP issued a certificate of substantial completion to Whiting-Turner.  *Id.*

At some point in 2021, Deka expressed interest in purchasing the property from JBG/LEP and retained Marx Okubo Associates, Inc. ("Marx Okubo") to perform a property condition assessment.  Decl. of Enda J. Bracken ("Bracken Decl.") ¶ 7, ECF No. 27-2.  Marx Okubo subcontracted the "Envelope and Exterior" portion of that assessment to Wiss, Janney, Elstner Associates, Inc. ("WJE").  *Id.* ¶ 8.  In July 2021, Marx Okubo issued its Property Condition Assessment Report, which, based on a WJE report, concluded that there were "no significant defects or deterioration" to the curtain wall.  *Id.* ¶¶ 9–10.

On August 19, 2021, JBG/LEP informed Whiting-Turner that a metal panel had fallen from the fifth floor of the building the day before, and that another panel appeared to be loose.  MSJ at 3.  On August 24, 2021, JBG/LEP and BCI met at the property to view the damage.  *Id.*

On September 17, 2021, Deka completed the purchase of the building from JBG/LEP.  *Id.* at 4.  On September 20, BCI emailed Deka's property manager, JLL, notifying it that BCI personnel was on site and ready to begin repairs.  *Id.*  JLL responded that Deka needed more

---

[1] In ruling on this motion for summary judgment, the Court assumes the truth of all uncontested facts identified in Whiting-Turner's "Statement of Undisputed Material Facts."  *See* Local Civ. R. 7(h)(1).

time for Deka's consultant to inspect the façade. *Id.* Two days later, JLL informed BCI that Deka did not want the panel reinstalled yet. *Id.* at 5.

On October 1, 2021, Deka attempted to send an email to Whiting-Turner requesting warranty documents for the façade. *Id.* Those documents included: (1) "The complete shop drawings for the metal panels on the façade;" (2) "Structural silicone adhesion tests with testing protocols and supporting data;" (3) "Quality control procedures for the assembly of the metal panels in the shop;" and (4) "[P]hotographs from the production, assembly and installation process." MSJ Ex. 7 ("Ex. 7"), ECF No. 25-8. Four days later, Deka sent JBG/LEP an email explaining that its October 1 email had been returned as "undeliverable" and reiterating its request for the warranty documents. *Id.*; MSJ at 5.

Deka retained WJE to investigate the fallen panel based on its familiarity with the building's exterior. Bracken Decl. ¶ 14. Due to "logistical issues, WJE commenced close-up inspections of the building façade from a suspended scaffold" beginning on November 16, 2021. *Id.* ¶ 15. On December 9, 2021, WJE issued a report on the façade. *Id.* ¶ 16; *see id.*, Ex. C to Bracken Decl. at 95–135. The report concluded that the "current [composite metal panel] cladding installation does not meet the requirements of the Contract Documents and is therefore deficient." Bracken Decl. ¶ 16. The report advised that "further investigation [was] necessary to determine the specific cause of the debonding of the panels," and noted that it was "not possible to define the extent of this condition without inspecting and testing each panel." *Id.* ¶ 17.

Deka filed this diversity action on October 9, 2024. Compl., ECF No. 1. In February 2025, Deka amended its Complaint. *See* Am. Compl., ECF No. 22-1. The Amended Complaint alleges two claims under D.C. law against Whiting-Turner: Count I for breach of contract, *id.* ¶¶ 43–50, and Count VI for professional negligence, *id.* ¶¶ 84–88. BCI and Sun Metals

3

answered the Amended Complaint. *See* ECF Nos. 23–24. But Whiting-Turner moved to dismiss the claims against it, or in the alternative, for summary judgment, and asserted a statute of limitations defense. *See* MSJ at 1. Deka filed its opposition to the motion, and also moved under Rule 56(d) for discovery related to Whiting-Turner's statute of limitations defense. Pl.'s Opp'n & Rule 56(d) Mot. to Conduct Discovery ("Pl.'s Opp'n"), ECF No. 27. The motions are now fully briefed and ready for the Court's consideration.

### III. LEGAL STANDARD

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Whiting-Turner moves to dismiss the claims against it under Rule 12(b)(6), or in the alternative for summary judgment under Rule 56, based on a statute of limitations defense. *See* MSJ. To support this defense, Whiting-Turner relies on many documents attached to its motion that were not attached to or incorporated into the Complaint. *See id.*; Am. Compl. Because the Court relies on these documents to decide the present motion, the Court will treat it as a motion for summary judgment.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he court must view the evidence 'in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in favor of the nonmoving party.'" *Grosdidier v. Broad. Bd. of*

*Governors*, 709 F.3d 19, 23–24 (D.C. Cir. 2013) (quoting *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011)).

## IV.  ANALYSIS

The Court first analyzes the applicable standard for determining when Deka's claims began to accrue, and then whether Whiting-Turner is entitled to summary judgment under that standard.  As discussed below, the Court denies Whiting-Turner's motion because, based on the current evidentiary record, material factual disputes preclude summary judgment.

"In D.C., to maintain a cause of action for breach of contract or negligence, a litigant must bring suit within three years from when a claim 'accrues.'"  *Commonwealth Land Title Ins. Co. v. KCI Techs., Inc.*, 922 F.3d 459, 464 (D.C. Cir. 2019) (citing D.C. Code § 12-301).  The parties agree this statute of limitations applies to both of Deka's claims against Whiting-Turner. *See* MSJ at 5, 8; Pl.'s Opp'n at 7.  Deka filed its Complaint in this action on October 9, 2024, *see* Compl., so the relevant inquiry is whether Deka's claims had accrued as of October 9, 2021.

Under D.C. law, a claim for negligence accrues when the injury results, and a claim for breach of contract accrues when the contract is first breached.  *Commonwealth*, 922 F.3d at 464.  But "to preserve claims in circumstances where the fact of injury or breach '"may not be readily discernible" at the time when actually incurred,'" the D.C. Court of Appeals recognizes a "well-established exception"—the discovery rule.  *Id.* (quoting *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1202 (D.C. 1984)).  Under the discovery rule, a claim accrues "when a party knows or by the exercise of reasonable diligence should know: (1) of the injury; (2) the injury's cause in fact; and (3) of some evidence of wrongdoing."  *Capitol Place I Assocs. L.P. v. George Hyman Const. Co.*, 673 A.2d 194, 199 (D.C. 1996), superseded in part on other grounds by D.C. Code

§ 16-4406(c).  The date on which actual or inquiry notice of a cause of action triggers accrual is a question of fact.  *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996).

Though "the D.C. Court of Appeals has never explicitly held that the discovery rule is available to a plaintiff in a commercial construction dispute," the D.C. Circuit has "predict[ed] that it would."  *Commonwealth*, 922 F.3d at 466.  According to the Circuit's decision in *Commonwealth*, "where a plaintiff in a construction dispute clearly lacks the requisite sophistication to identify defects that are latent in nature[,] the D.C. Court of Appeals would hold that the discovery rule is available to that plaintiff, even in the commercial context."  *Id.*  Whiting-Turner discussed the discovery rule in its motion.  MSJ at 6.  But it argued in its reply brief that it had merely "assume[d]" the rule's "application for the sake of argument," and urges the Court to "decline to apply it here."  Reply to Opp'n ("W-T Reply") at 1, ECF No. 29.  This Court, however, is bound by the D.C. Circuit's latest interpretation of the discovery rule in *Commonwealth*, and the parties have not raised a more recent D.C. Court of Appeals decision that would cast any doubt on that precedent.  *See Easaw v. Newport*, 253 F. Supp. 3d 22, 34 (D.D.C. 2017); Pl.'s Reply at 1–2, ECF No. 30.

In *Commonwealth*, an insurance company sued two land surveyors for breach of contract and negligence in connection with allegedly defective land surveys that failed to notice a twelve-inch encroachment by an abutting building onto an insured company's property.  922 F.3d at 462.  The district court granted the defendants' motion to dismiss based on a statute of limitations defense, reasoning that the insurer and insured were sophisticated business entities and that two surveys that identified encroachments of two to four inches put the insurer and insured on notice of their claims.  *Id.* at 462–63.  The D.C. Circuit reversed, holding that the discovery rule was applicable because it was not clear that the insured had "failed to exercise

reasonable diligence in attempting to discover the full extent of the encroachment." *Id.* at 466–68. Even accepting that the insured "may be a sophisticated business entity," the court reasoned that it "lack[ed] sophistication in the area of land surveying," as evinced by it commissioning four separate land surveys. *Id.* at 467. The court also held that the encroachment "was far from open and obvious; it was so latent that, despite four attempts, the land surveyors were unable to accurately identify it, and it was discovered only after the Property's brick façade was removed." *Id.* The court extended this reasoning to the insurer, explaining that the insurer "may be a sophisticated insurer, but it is not sophisticated in the field of land surveying, and it reasonably relied on" the allegedly defective survey. *Id.* at 468. Thus, the discovery rule precluded dismissal based on the defendants' statute of limitations defense at the pleading stage. *See id.* at 467–68.

The same result is justified here—at this juncture, there are material factual disputes as to whether Deka "failed to exercise reasonable diligence in attempting to discover the full extent of the" alleged façade defects. *See id.* at 467. Even accepting that Deka "is a sophisticated entity in the business of owning and operating commercial property," W-T Reply at 3, that does not mean Deka was sophisticated in assessing building façade design and installation. This lack of sophistication is further evinced by its commissioning of two reports on the building's exterior. *See Commonwealth*, 922 F.3d at 467; Bracken Decl. ¶¶ 7–8, 14. And the evidence does not obviously support either that Deka's "professional property manager" failed to exercise reasonable diligence in discovering the extent of the façade's defects, *see* W-T Reply at 3, or that Deka unreasonably relied on the July 2021 report prepared by Marx Okubo that failed to identify the panel adhesion defect at issue here, *see* Pl.'s Opp'n at 13.

7

Moreover, the reasoning in *Commonwealth* supports that the nature of this alleged defect was latent: WJE was "unable to accurately identify it" in its July 2021 report, and "it was discovered only after the Property's [metal] façade" began to detach, *see Commonwealth*, 922 F.3d at 467, and WJE was able to conduct "close-up inspections of the building façade from a suspended scaffold," Bracken Decl. ¶ 15. Whiting-Turner contends that the defect was "open and obvious" in August 2021 after the first metal panel fell off the building and the second panel appeared to be loose. W-T Reply at 3. The alleged defect, however, is not the detachment of a few panels, but the widespread failure of the structural silicone adhesive. *See* Pl.'s Opp'n at 13. Though the failure of the individual panels was obvious as of August 2021, the same is not true for alleged defects involving the adhesive attaching all the other metal panels to the building. Applying the reasoning of *Commonwealth* to the facts here, the Court concludes that the discovery rule may apply to Deka's claims against Whiting-Turner.

Whiting-Turner's reliance on *Capitol Place* is misplaced. *See* W-T Reply at 4. In that action related to defective construction, the D.C. Court of Appeals held that, even assuming "that the discovery rule is applicable in the context of commercial construction disputes," the exception was inapplicable because "indisputable evidence of record show[ed] that the early signs of defect were abundant." *Capitol Place*, 673 A.2d at 200. "From the outset, the building was plagued with problems, most of them related to water infiltration." *Id.* at 196. Those problems included "efflorescence on the building's façade" beginning around 1984, reports of leakage by an architect in 1986 and tenant in 1989—including complaints of "'squishy' carpets and mushroom growth in two or three offices"—and "masonry distress problems" the plaintiff learned about from its architect in 1987, all over three years before bringing a demand for arbitration in 1994. *See id.* at 196–97. "Viewing the evidence in the light most favorable to

appellant," the court held that "any reasonable person would be compelled to conclude that there was nothing 'obscure' about the harm or source thereof, and thus the discovery exception [was] inapplicable." *Id.* at 200. In reaching its conclusion, the court rejected plaintiff's argument that the discovery exception saved its claims because "it did not understand the full range of problems until" it received an engineer's report. *Id.* The court reiterated, "[t]he discovery rule does not [ ] permit a plaintiff who has information regarding a defendant's negligence, and who knows that she has been significantly injured, to defer institution of suit and wait and see whether additional injuries come to light." *Id.* (en banc) (alteration in original) (quoting *Colbert v. Georgetown University*, 641 A.2d 469, 473 (D.C. 1994)).

Here, the record evidence does not indisputably support Whiting-Turner's claim that the alleged façade defects were open and obvious. Unlike the multiple indicators of water infiltration that were readily visible and reported over a seven-year period in *Capitol Place*, 673 A.2d at 196–97, here, Deka became aware of the failure of adhesion on two metal panels, at earliest, in August 2021, *see* MSJ at 3. Given that these two failures were the first signs of the defect, the Court cannot say based on this record that no reasonable jury could find that Deka exercised reasonable diligence in discovering the cause of the detachments or the nature of the defect by October 9, 2021, a few weeks after closing on the property. *See id.* at 4–5. Thus, the latency of the alleged defect distinguishes this case from *Capitol Place*.

For purposes of deciding this motion for summary judgment, then, the pertinent question is if there is a material dispute whether Deka knew or should have known of the allegedly defective façade on or before October 9, 2021. *See Capitol Place*, 673 A.2d at 199. The answer is easily yes.

First, the evidence submitted by Whiting-Turner does not establish Deka's actual knowledge of the allegedly defective façade. Whiting-Turner argues that "Prior Owner, Plaintiff's admitted predecessor-in-interest, disclosed the existence of the issue to BCI prior to Plaintiff's purchase of the Property." MSJ at 8. But Whiting-Turner does not define what it means by "the issue." True, everyone knew or should have known about one fallen panel and another loose panel in August 2021. *Id.* at 3. But the issue of an isolated fallen panel and a wholesale, botched façade installation are significantly different, such that knowledge of the former does not necessarily constitute knowledge of the latter. *See* Pl.'s Reply at 2. Deka submitted a declaration of its Senior Vice President and a pre-purchase report prepared by its consultant in July 2021 that both support that Deka had no knowledge of a widespread defect in the building's façade—or its cause—prior to December 2021. *See* Bracken Decl. ¶¶ 10–11, 16; Ex. A to Bracken Decl. Deka further argues that "because hundreds of remaining panels did not exhibit apparent signs of issues, Deka had no reason to conclude that a widespread latent defect was affecting the [composite metal panels]." Pl.'s Opp'n at 10. The Court agrees that there is a material dispute over Deka's actual knowledge, such that Whiting-Turner is not entitled to summary judgment on this basis.

Second, the evidence submitted by Whiting-Turner similarly fails to establish that Deka should have known about the alleged defects by October 9, 2021. Whiting-Turner submitted evidence of correspondence confirming that Deka was aware of issues with at least two panels in September 2021, and that by October 1, 2021, Deka had begun investigating the matter further and had requested documents related to the façade panels' warranty. *See* Ex. 7; MSJ at 5. Deka followed up on its request four days later. Ex. 7; MSJ at 5. Drawing reasonable inferences in favor of the non-movant, the emails do not support that Deka should have learned of the nature

of its claim within four days of that follow-up email, even by the exercise of reasonable diligence. Whiting-Turner argues that the limitation period's "running is not delayed simply because the claimant does not know (or cannot be charged with knowledge of) the full 'breadth or nature' of the respondent's alleged wrongdoing." MSJ at 6 (quoting *Brin v. S.E.W. Invs.*, 902 A.2d 784, 792 (D.C. 2006)). That quoted language discusses what it means for a plaintiff to have knowledge "of some evidence of wrongdoing." *See Brin*, 902 A.2d at 792. But Deka has submitted evidence supporting that, despite reasonable diligence, it did not have knowledge of the injury itself or its cause in fact, let alone evidence of wrongdoing, before receiving the December report. *See* Pl.'s Opp'n at 12–15. Even assuming Deka's October 1 email requesting documents regarding "[s]tructural silicone adhesion tests" support that Deka had concerns that the defect may be widespread and not limited to individual panels, the Court cannot say as a matter of law that Deka should have known within eight days of expressing those concerns that they might be warranted. *See* Ex. 7.

Though Whiting-Turner refers to Deka's requests that BCI not repair the panels until Deka had investigated the issue as a "serial refusal to investigate the cause of the fallen façade panel," W-T Reply at 3, the evidence does not support that characterization as a matter of law. The Marx Okubo report stated the building's façade appeared fine in July 2021. Bracken Decl. ¶¶ 9–10. The first panel fell in August. MSJ at 3. Deka closed on the property in September. *Id.* at 4. Deka requested documents related to the panel warranties on October 1, and did not get through to Defendants until October 5. *Id.* at 5. Deka's consultants began performing inspections in November. Bracken Decl. ¶ 15. And Deka received a report describing the nature of the alleged defect in December. *Id.* ¶ 16. A jury could possibly find this timeline to reflect

unreasonable delay in investigating the defect, but that "is a question to be decided by the trier of fact." *See Ehrenhaft*, 483 A.2d at 1204.

In sum, the Court cannot decide as a matter of law based on the record evidence that Deka knew or should have known of the alleged defects on or before October 9, 2024. "[T]his is unsurprising, since the [discovery] rule's application, most often, depends on contested questions of fact." *See Commonwealth*, 922 F.3d at 466. The Court therefore denies Whiting-Turner's motion for summary judgment based on its statute of limitations defense.

In light of the Court's decision to deny Whiting-Turner's motion for summary judgment, the Court will also deny Deka's Rule 56(d) motion as moot. *See Jones v. District of Columbia*, No. 23-cv-1488, 2024 WL 1213326, at *9 n.7 (D.D.C. Mar. 21, 2024) (denying Rule 56(d) discovery motion as moot where court denied motion for summary judgment). This decision does not preclude Deka from seeking discovery relevant to rebutting Whiting-Turner's statute of limitations defense in the ordinary course of discovery, so long as that discovery otherwise complies with Rule 26(b).

## V. CONCLUSION

For the foregoing reasons, Whiting-Turner Contracting Company's Motion for Summary Judgment (ECF No. 25) is **DENIED**; and Plaintiff's Rule 56(d) Motion to Conduct Discovery (ECF No. 27) is **DENIED** as moot. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: October 22, 2025                                                            RUDOLPH CONTRERAS
                                                                                                   United States District Judge